UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-286(DSD/SRN)

Ikon Office Solutions, Inc.,

Plaintiff,

v. **ORDER**

Robert J. Dale, William J. Dale, Terry R. Nissen and Computer Solutions, Inc.,

Defendants.

Jeremy D. Sosna, Esq., Littler & Mendelson, 33 Sixth Street South, Suite 3110, Minneapolis, MN 55402 and Thomas T. Loder, Esq., Lawrence H. Pockers, Esq. and Duane, Morris & Heckscher, One Liberty Place, Philadelphia, PA 19103, counsel for plaintiff.

Jeffrey P. Anderson, Esq., John A. Fabian III, Esq. and Nichols, Kaster & Anderson, 4644 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on the motion of plaintiff for a preliminary injunction. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants in part and denies in part plaintiff's motion for preliminary injunction.[1]

[1] On February 21, 2001, this court refused to enter a temporary restraining order against defendants on the basis that plaintiff failed to satisfy all of the necessary criteria for the issuance of a temporary restraining order. See Dataphase Sys., (continued...)

FILED 4-17-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

## BACKGROUND

Plaintiff IKON Office Solutions, Inc. ("IKON") brings this motion seeking a preliminary injunction to prevent defendants from violating the terms of several agreements that purportedly obligate defendants to refrain from competing with plaintiff. Plaintiff also seeks an order enjoining defendants from using its purportedly confidential proprietary information that plaintiff contends constitutes trade secrets and to desist in allegedly interfering with IKON's actual and prospective business relations and from engaging in unfair competition. Plaintiff further alleges that, since no adequate remedy is available at law, injunctive relief is warranted. For the reasons stated the court grants in part and denies in part the motion.

## DISCUSSION

In evaluating a motion for preliminary injunction, the court considers the four factors set forth by the Eighth Circuit in Dataphase Systems, Inc. v. CL Systems, Inc.: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable

---

[1](...continued)
Inc. v. CL Systems, Inc., 640 F.2d 109, 112-114 (8th Cir. 1981). The court was not persuaded that movant had demonstrated that the threat of irreparable harm would result without injunctive relief and noted that, "at this preliminary stage, the court concludes that any alleged damage appears to be economic in nature and is therefore fully redressable by the award of money damages in an action-at-law."

harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. 640 F.2d 109, 112-114 (8th Cir.1981). The court balances the four factors to determine whether injunctive relief is warranted. See id. at 113; West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987). The plaintiff bears the burden of proof concerning each of them. See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

## I. Likelihood of Success on the Merits

Plaintiff has brought multiple claims against the defendants including: breach of contract, misappropriation of trade secrets, unfair competition and interference with actual and prospective business relations and contractual relations with employees. The court concludes that plaintiff is likely to succeed on the merits of only one of these claims, the breach of contract claim as it relates to the non-competition covenant between Robert Dale, Computer Business Solutions, Inc. ("CBS") and plaintiff arising from the Purchase and Sale Agreement dated September 30, 1999. As to this claim, plaintiff is entitled to the issuance of a preliminary injunction.

**A. Breach of Contract**

The breach of contract claim is based on three agreements:

1. A September 30, 1999, purchase and sale agreement between Ikon and Robert Dale and CBS.

2. A December 5, 1995, agreement between Mankato Business Products, Inc., William Dale, Robert Dale and ALCO Standard, Inc.

3. A March 6, 1995, agreement between Terry Nissen and Mankato Business Products, Inc.

**1. Robert Dale and CBS**

Robert Dale and CBS entered into a Purchase and Sale Agreement on September 30, 1999 with plaintiff. (See Compl. Ex. B.) In this agreement, these defendants purchased a portion of IKON's business as it related to the sales and servicing of computer-related business equipment. Robert Dale and CBS also expressly agreed to not compete with: "the business [IKON] conducted relating to copiers, facsimiles, typewriters and all other activities and Products which are not exclusively and directly related to computer equipment, and service of the same." (Id. Ex. B ¶ 1.2 and 10.) Moreover, the Separation Agreement dated September 30, 1999, and incorporated by reference into the Sale and Purchase Agreement, expressly provides in paragraph 9 that, "You agree that for a period of five (5) years from June 1, 1998 you will not directly or indirectly compete with any business currently conducted by IKON throughout North America except that you may conduct the business

regarding which the assets are purchased pursuant to the agreement within the areas and subject to the terms and conditions of the same." (Id. Ex. C.)[2]

Under Minnesota law, a non-competition agreement is enforceable if, (1) consideration exists for signing the agreement, (2) the restriction is reasonable, and (3) the legitimate interest of the plaintiff is greater than that of the defendant. See Webb Publ'g Co. v. Fosshage, 426 N.W.2d 445, 449-50 (Minn. Ct. App. 1988); see also Satellite Indus. Inc. v. Keeling, 396 N.W.2d 635, 639 (Minn. Ct. App. 1987).

The court first concludes that sufficient consideration was expressly paid in the amount of $50,000.00 in exchange for this non-competition agreement. (See Comp. Ex. B ¶ 3.2.)

The court next must evaluate whether the terms of the restriction are reasonable under Minnesota law and whether they reflect the legitimate business interests of the plaintiff. See Satellite Indus., 396 N.W. 2d at 640. The test for reasonableness was well stated in Bennett v. Storz Broadcasting Co.:

> The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than

[2] Unambiguous contractual terms are to be given their plain and ordinary meaning. See Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 67 (Minn. 1979). Contrary to defendants' assertions, the court concludes that the terms of this agreement are clear and unambiguous.

> is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends. ...
>
> The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interests of the employer and the employee.

270 Minn. 525, 534-536, 134 N.W.2d 892, 899-900 (1965). Minnesota law also recognizes the "blue pencil doctrine" that allows a court to modify an unreasonable non-competition agreement and enforce it only to the extent that it is reasonable. See Bess v. Bothman, 257 N.W.2d 791, 794 (Minn. 1977); Davies & Davies Agency Inc. v. Davies, 298 N.W.2d 127, 131 (Minn. 1980).

After a careful review of the record, the court concludes that the terms of the non-competition agreement are not reasonable as drafted. The court particularly finds that the time period of five years is too long, creates an undue hardship upon defendants and fails to serve any legitimate needs of plaintiff's business. See Webb, 426 N.W.2d at 449-450; Dynamic Air, Inc. v. Bloch, 502 N.W.2d 796, 799 (Minn. 1993) ("[i]n analyzing the reasonableness of a covenant, the court considers ... the time for which the restriction is imposed..."); Overholt Crop Ins. Serv. Co., Inc. v. Bredeson, 437 N.W.2d 698, 703 (Minn. Ct. App. 1989) (examining the nature of the work, time necessary to train new employees, and the time necessary for customers to become familiar with new employees

in evaluating the reasonableness of temporal restriction.); Bennett, 134 N.W.2d at 899 ("[t]he validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained...).

The court thus modifies the time period of the non-competition agreement as found in paragraph 9 of the Separation Agreement as follows:

> You agree that for a period of ~~five (5)~~ three (3) years from June 1, 1998 you will not directly or indirectly compete with any business currently conducted by IKON throughout North America except that you may conduct the business regarding which the assets are purchased pursuant to the Agreement within the areas and subject to the terms and conditions of the same.

(Compl. Ex. C at ¶ 9.)

The court concludes that the plaintiff is likely to succeed on the merits of its claim for breach of the 1999 purchase agreement as modified by this court, therefore plaintiff satisfies this Dataphase factor and, based on the court's conclusion as to the other factors, is entitled to an injunction on this claim alone. Defendants Robert Dale and CBS are enjoined from competing with plaintiff in the copier-related business for a period of three years expiring on June 1, 2001.

**2. Terry Nissen**

Defendant Terry Nissen signed a non-competition agreement on March 6, 1996, with plaintiff's predecessor that purportedly

restricted him from competing within 75 miles of Willmar and for a period of one year after leaving his employment. (See Compl. Ex. D.) Nissen resigned from IKON on December 5, 2000, and went to work for CBS. Plaintiff asserts that Nissen is thus presently in breach of this non-competition covenant. The court does not agree.

Restrictive covenants that limit one's right to work and earn a livelihood are generally disfavored by courts since they restrain free trade. See Nat'l Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982); Sanborn Mfg. Co. v. Currie, 500 N.W.2d 161, 164 (Minn. 1993); Bennett, 134 N.W.2d at 898 (providing that restrictive agreements are "looked upon with disfavor, cautiously considered, and carefully scrutinized.").

Moreover, these agreements are invalid unless bargained for and supported by consideration. Sanborn, 500 N,W,2d at 164; Satellite Indus., 396 N.W.2d at 639 (holding that the agreement must be bargained for and provide the employee with real advantages). Where a non-competition agreement is not ancillary to an employment contract, it must be supported by separate consideration to be enforceable. Id.; Cashman, 323 N.W.2d at 740 (holding that employer must provide independent consideration to create valid non-competition contract). When an employer fails to

inform an employee of a non-competition agreement until after the job has been accepted, Minnesota courts have held that the employer "takes undue advantage of the inequality between parties." Id.

While in some instances the continuation of employment may constitute sufficient consideration to uphold a non-competition agreement entered into after the employee has already begun working for the employer, the employer must demonstrate that the covenant was bargained for and provides the employee with real and additional advantages. See Freeman v. Duluth Clinic Ltd., 334 N.W.2d 626, 630 (Minn. Ct. App. 1983); Cashman, 323 N.W.2d at 741 (training did not constitute independent consideration for non-competition agreement because it did not provide any real benefits beyond those already obtained by employee in underlying employment contract). That is, proof of continued employment alone is not enough to show the existence of sufficient consideration to uphold a non-competition agreement. Davies, 298 N.W.2d at 131 (upholding validity of noncompete agreement where employee received "substantial economic and professional benefits" after signing). Whether independent consideration is adequate in an ongoing employment relationship depends on the individual facts of the case. Id. at 130.

Nissen argues that his noncompete agreement is not supported by valid consideration since he signed it after beginning employment with plaintiff's predecessor, Mankato Business Products,

Inc. ("BPI"). The court agrees. The record abundantly reflects that Nissen signed the agreement after accepting the employment offer and not as a separately bargained for condition of employment or in exchange for some additional employment benefit or advantage. (See Nissen Dep. at 13-16.) The non-competition agreement therefore lacks adequate consideration, and the court concludes that it is invalid and unenforceable.

**3. The March 6, 1995 Agreement**

On December 5, 1995, Robert Dale and William Dale sold their interest in BPI to plaintiff's predecessor. As a part of this sale, Robert Dale and William Dale agreed to certain non-competition obligations. By their express terms, these 1995 non-competition obligations expired on December 5, 2000. (See Compl. Ex. A.) The court thus concludes that plaintiff is not entitled to an injunction enforcing this agreement. See Cherne Indus. Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 93 (Minn. 1979) (explaining that once the restrictive period of a covenant not to compete has expired, an injunction cannot be granted).

**B. Misappropriation of Trade Secrets**

Plaintiff also seeks injunctive relief for a claim against defendants for misappropriation of trade secrets. The Uniform Trade Secrets Act, Minn. Stat. § 325C.01 (2000), articulates much of the common law concerning trade secrets and confidential information and allows for the protection of certain types of

information through an action for misappropriation. Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897-98 (Minn.1983). The act requires that the party seeking protection must be able to demonstrate both the existence of and the misappropriation of a trade secret. Id. at 897.

To qualify as a trade secret under the act, information (1) must not be generally known or readily ascertainable, (2) must derive independent economic value from secrecy, and (3) must be the subject of reasonable efforts to maintain its secrecy. See Minn. Stat. § 325C.01, subd. 5; Electro-Craft, 332 N.W.2d at 899-900.[3] The party asserting misappropriation must establish each factor to sustain its claim. See Nordale, Inc. v. Samsco, Inc., 830 F. Supp. 1263, 1273 (D. Minn. 1993).

After a careful review of the record including the several deposition transcripts that have been submitted by the parties, the court concludes that plaintiff fails to establish that it can satisfy any of these factors. In particular, the court is not

---

[3] Minn. Stat. § 325C.01, subd. 5 (2000), specifically provides:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

persuaded that plaintiff can establish that any of the information that defendants' purportedly acquired from IKON is not already generally known or readily ascertainable. The court thus concludes that plaintiff is not entitled to an injunction on the misappropriation of trade secrets claim.

**C. Unfair Competition and Business Tort Claims**

Plaintiff also brings several claims for unfair competition and interference with actual and prospective business relations and contractual relations with employees. The court, however, is not persuaded that plaintiff is likely to succeed on the merits of any of these claims under Minnesota law. Thus, plaintiff's request for injunctive relief as it applies to these claims is denied.

**II. Irreparable Harm**

Essential to the inquiry in analyzing the issuance of a preliminary injunction is "whether the movant has shown the threat of irreparable injury." Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991). Minnesota courts recognize that the breach of a valid non-competition agreement affirmatively raises an inference of irreparable harm. See Overholt, 941 F.2d at 1371. See also Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1091 (D. Minn. 1981).

In its February 22, 2001 order, this court initially determined that the issuance of a temporary restraining order was not warranted because plaintiff had not established that irreparable harm would result or that money damages would not suffice. However, after a careful review of the developed factual record, and the evidence now submitted by the parties, the court determines that plaintiff has established that there exists an inference of irreparable harm absent injunctive relief as only to the breach of the September 30, 1999 agreement as modified. The court thus concludes that plaintiff has satisfied this Dataphase factor.

**III. The Balance of Hardships and the Public Interest**

Under the final two Dataphase factors, the court must evaluate the balance of harm between the parties and the public interest. Dataphase, 640 F.2d at 113. Only when both of these factors weigh in favor of the plaintiff will the court issue an injunction. Id.

The court determines that the benefit of partial injunctive relief to plaintiff would far outweigh any detriment to defendants since an injunction protects plaintiff's investment, goodwill, business reputation and basic contractual rights while striving to minimize the amount of time that defendants are prohibited from participating in the marketplace. That is, by issuing an injunction that modifies the time limits of the September 30, 1999 agreement, the court strikes a reasonable balance between

protecting the legitimate business interests of the plaintiff and limiting the hardships imposed upon defendants.

For the same reasons the injunction promotes the public interest since it supports the reasonable enforcement of acquisition agreements and investments made by businesses in the development of their companies while safeguarding the objectives of free competition.

In conclusion, since plaintiff has shown: (1) the likelihood of success on the merits of its claim for breach of contract pertaining to the September 30, 1999 agreement as modified by the court, (2) that it will suffer irreparable harm as to that claim, (3) that the balance of harm tilts decidedly in its favor, and (4) the public interest is served by issuing an injunction, **IT IS HEREBY ORDERED** that:

1. IKON's motion for a preliminary injunction is granted in part and denied in part.

2. The court modifies the time period of the non-competition agreement between plaintiff and defendants Robert Dale and CBS as delineated in the Purchase and Sales Agreement dated September 30, 1999, to be in effect for a period of <u>three</u> years running from June 1, 1998.

3. Defendant Computer Business Solutions, Inc. and Robert Dale are hereby restrained and enjoined by this order, until June 1, 2001, from competing with the business of IKON relating to the

sale or servicing of copiers, facsimiles, typewriters and all other activities and products which were not exclusively and directly related to computer equipment and service of the same, as delineated in the express and unambiguous terms of the Purchase and Sales Agreement entered by the parties on September 30, 1999.

4. Pursuant to Fed. R. Civ. P. 65(c), plaintiff shall post a nominal bond in the amount of $1,000.

5. The motion for an injunction as to the other claims of plaintiff is denied.

Dated: April 17, 2001

David S. Doty, Judge
United States District Court